# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| **DAVID C. MARTIN,** *Plaintiff,* v. **NAES CORPORATION,** *Defendant.* | CASE NO. 6:12-CV-00058 <br><br> **MEMORANDUM OPINION** |

Plaintiff David C. Martin ("Plaintiff") alleges breach of contract in his suit against Defendant NAES Corporation ("Defendant"). This matter is before the court upon the motion for summary judgment filed by Defendant on September 30, 2013 and argued before the Court on October 30, 2013. For the following reasons, I will grant Defendant's motion.

## I. BACKGROUND

NAES is an energy company that contracted with Dominion Power to provide services at a power station located in Altavista, Virginia, where Plaintiff worked as a technician. In the summer of 2010, NAES notified Altavista Power Station employees that it planned to close the plant, and that it would therefore lay off most of the plant's employees and provide them with severance packages. As the plant's closing date approached, NAES asked Plaintiff to work at the Gordonsville Power station (also operated by NAES) beginning on November 15, 2010 for a period of two weeks. Plaintiff alleges that he agreed to work at the Gordonsville station for the two-week period on the condition that he would still receive the severance package offered to him in connection with the closing of the Altavista Power Station. According to Plaintiff, he received such assurance in writing. In an email originally sent by Addison Daniel and forwarded to Plaintiff, Daniel estimated that the Altavista employees would need to work at the Gordonsville plant until December 16, and added "[w]hen the person(s) completes his

[1]

assignment at Gordonsville, he will be laid off with the same severance package as if he had been laid off on November 19, the current lay-off date." Plaintiff states that his work at the Gordonsville Power Station was extended from two to five and one-half weeks, allegedly against his wishes, and he was not released from that job until December 22, 2010.

Meanwhile, on December 15, 2010, NAES presented plaintiff with a written notice that his employment at the Altavista Power Station would be terminated as of December 26, 2010. The notice stated that NAES would provide Plaintiff with severance pay equal to one week of pay for each year Plaintiff had worked at the Altavista Power Station, or $25,706.85. The notice stated that Plaintiff had 21 days to consider the offer. Plaintiff alleges that he accepted the severance package in writing within 13 days after it was offered, and that the offer was not revoked prior to his acceptance. Upon termination of his employment, Plaintiff received his final paycheck, which included payment for unused accrued FlexLeave, as promised in Defendant's outline of employee benefits following separation. NAES refuses to pay Plaintiff the $25,706.85 he claims he is owed under the terms of the severance agreement. Plaintiff seeks to recover this amount as well as $100,000 in damages for emotional distress and $100,000 in punitive damages.

NAES claims that NAES verbally offered plaintiff a position at the Pittsylvania Power Station on December 21, 2010, a job offer that would allow plaintiff to continue working for NAES without a break in his employment. Defendant asserts that Plaintiff emailed his acceptance on December 22, 2010. Plaintiff also inquired as to whether he would still receive the severance package. Defendant claims that it verbally informed Plaintiff that he would not be eligible for severance under those circumstances. Plaintiff e-mailed NAES again on December 26 objecting to having to choose either the job or the severance, but stating his understanding.

On December 27, 2010, Defendant sent Plaintiff a written transfer offer that stated that should plaintiff accept the transfer, his severance would be revoked. Plaintiff executed both the transfer agreement and the severance agreement on December 28, 2010, signing the transfer agreement with a notation indicating the signature was "under duress."

This case was originally removed from Campbell County Circuit Court on October 16, 2012. A motion to dismiss, or in the alternative for summary judgment, was filed by Defendant on October 23, 2012. The motion was fully briefed, and a hearing was held before this Court on January 11, 2013. On February 14, 2013, I issued an opinion construing the motion as a motion for summary judgment, granting summary judgment in regards to the ADEA claim, and denying it in regards to the breach of contract claim. A renewed motion for summary judgment was filed by Defendant on September 30, 2013 following discovery. This motion was also fully briefed, and a second hearing was held on October 30.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus.,*

*Inc,* 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' … an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324.

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … [must] by affidavits or as otherwise provided in … [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

### III. DISCUSSION

Under Virginia law, there must be a meeting of the minds in order for a contract to be formed. *See Persinger & Co. v. Larrowe*, 477 S.E.2d 506, 509 (Va. 1996) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent, and therefore, no contract."). In other words, the parties must have been in agreement upon the terms for a contract to be created.

Plaintiff contends that there was an "oral collateral contract in which NAES officials promised the selected employees, including Plaintiff, that if they would stay with APS until the plant shut-down was complete, those employees would receive a severance package." Pl.'s Resp. to Def.'s Mot. for Summ. J. 6 (docket no. 41). Notably, Plaintiff relies solely upon an interpretation of Defendant's present motion in order to support this claim. *Id.* Additionally, Plaintiff does not cite any legal precedent to support the suggestion that an oral contract, of the kind he alleges existed, would be sufficient to be dispositive. Rather, Plaintiff merely cites to the contract law principle of acceptance by performance, noting that Virginia recognizes the doctrine. *See Woodward v. Com.*, 438 S.E.2d 777, 779 (Va. App., 1993) ("Acceptance by performance requires that at least part of what the offer requests be performed or tendered").

Defendant correctly notes that an oral agreement must be reasonably certain, definite, and complete under Virginia Law. *See Smith v. Farrell*, 199 Va. 121, 128 (1957). However, an examination of the definiteness of the purported agreement is in fact unnecessary here, because the facts plainly demonstrate that the agreement was not as Plaintiff represents it to be. The record clearly reflects that Altavista employees who chose to remain with NAES and complete work at Gordonsville would "be laid off with the same severance package *as if* . . . [they were laid off on] the current layoff date." Def's. Mot. for Summ. J. Ex. B 46 (docket no. 39) (emphasis added). These employees would, upon termination, be entitled to severance just as

they would have been had the Gordonsville work not occurred and the lay-off date been sooner. In other words, the Gordonsville work would not *guarantee* severance pay; instead, it would insure that *eligibility* for severance pay upon termination would not be jeopardized by the additional work, though accepting the Gordonsville work did change the timing. The record reflects that Plaintiff didn't want "to chance loosing [his] Altavista Power severance" and therefore requested assurance that his eligibility would not be jeopardized by the Gordonsville work. *Id.* at 52. Plaintiff received that assurance. The record also reflects, however, that Plaintiff believed that his work at Gordonsville should have entitled him to "receive [his] severance package *no matter what*." *Id.* at 58 (emphasis added). But Plaintiff has never presented evidence inconsistent with the obvious implication from the facts, which is that while a terminated employee would be entitled to severance pay, no guarantee existed to give the severance "no matter what."

I further note that even if Plaintiff's construction of the timeline were correct and Plaintiff became eligible for severance upon the closing of the Altavista Power Station, rather than upon completion of the work at the Gordonsville Power Station, it would be irrelevant, as NAES did in fact follow through and offer Plaintiff severance. The crux of the case involves Plaintiff forfeiting that earned severance package by opting to sign the transfer letter instead.

Plaintiff also suggests it is "worth mentioning here" that he detrimentally relied on the supposed oral agreement, serving Defendant "in harsh winter conditions until his hands cracked and bled" and that he stayed "in a lonely hotel, away from his family and friends at Christmas time." Pl.'s Resp. to Def's. Mot. for Summ. J. 7 (docket no. 41). While the Court certainly has sympathy for Plaintiff's difficulties during the winter in question, Defendant is unequivocally correct that even if Plaintiff's version of the facts were accepted as true, Virginia has rejected the

use of an offensive promissory estoppel argument, holding that "promissory estoppel is not a cognizable cause of action in the Commonwealth." *W.J. Schafer Assocs. V. Cordant, Inc.*, 254 Va. 514, 521 (Va. 1997). Thus, Plaintiff's detrimental reliance argument does nothing to change the facts surrounding Plaintiff's misconceptions about the supposed oral agreement.

While there is no evidence to support Plaintiff's contention that an oral agreement existed to give Plaintiff severance pay "no matter what," there is dispositive evidence supporting Defendant's contention that "NAES's offer of a transfer to Pittsylvania specifically excluded [Plaintiff] from eligibility for the severance." Def's. Mot. for Summ. J. 10-11 (docket no. 39). The transfer letter, signed by Plaintiff, specifically states that "upon acceptance of this offer of transfer, previously provided severance documents . . . become null and void since no termination of employment occurred." Def.'s Mot. for Summ. J. Ex. B 42 (docket no. 39). Importantly, Defendant's present motion includes the admission of Plaintiff that he was informed by NAES that he "could have the severance or the job, one or the other, not both," and that armed with this knowledge, he signed the transfer letter. *Id.* at 32. During oral argument, counsel for Plaintiff did not dispute this, but simply stated that Plaintiff recognized Defendant's position while disagreeing with it. But Plaintiff's disagreement with the position of Defendant does not mean that Defendant's offer was anything other than what Defendant purported it to be, and Plaintiff's acceptance of that offer while disagreeing does not mean that there was no meeting of the minds; instead it means that Plaintiff accepted an offer, albeit begrudgingly.

The transfer letter is signed by Plaintiff with the words "Signed under Duress" included and a letter from Plaintiff's counsel attached which states that Plaintiff accepts the Pittsylvania Power Station job but maintains his belief of entitlement to severance pay. Plaintiff alleges, without evidence, that Defendant drafted the transfer letter with the intention to "characterize

Plaintiff's new job as a transfer . . . [in order to] take away the severance package from Plaintiff's previous job (which he had already earned and accepted)." Pl.'s Resp. to Def's. Mot. for Summ. J. 4 (docket no. 41). But claims of duress cannot be based upon "bare suggestion, innuendo or suspicion." *Waddy v. Grimes*, 153 S.E. 807, 815 (Va. 1930).

Instead, duress is "the application of undue pressure in a contractual bargaining process through the use of improper threats or physical force." *King v. Donkenny, Inc.*, 84 F. Supp. 2d 726, 728 (W.D. Va. 2000). While a cause of action for economic duress may be made out, "a contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of the facts is not a contract executed under duress." *Seward v. American Hardware Co.*, 161 Va. 610, 639 (Va. 1933) (quoting *Cary v. Harris*, 91 S.E. 1966 (Va. 1917)). Here, even construing Plaintiff's allegations as favorably as possible, all that one can conclude is that Plaintiff accepted the Pittsylvania position despite knowing this meant forfeiting severance and feeling aggrieved by Defendant's hardball tactics. Thus, Plaintiff's alleged duress does not even rise to the level of the duress rejected by *Seward*.

As Defendant points out, "Plaintiff has never provided evidence that NAES in any way improperly threatened or coerced him into signing the transfer offer letter." Def's. Reply to Pl.'s Resp. Mem. in Opp'n to Def.'s Mot. for Summ. J. 16 (docket no. 42). Without any such coercion, there can be no duress, and thus Plaintiff's "Signed under Duress" notation is nothing more than an expression of dissatisfaction with the paperwork he nevertheless signed. I agree that Defendant, perhaps unnecessarily, put Plaintiff in a position where none of his options were perfect. But Plaintiff simply cannot reasonably expect to obtain the benefit offered by his signing the transfer letter and at the same time allege that he didn't really mean his signature with regards to the corresponding detriment.

Furthermore, as Defendant notes, the remedy for duress is to void the contract and grant the aggrieved party relief from having to perform. *See, e.g., Bond v. Crawford*, 193 Va. 437, 444 (1952). Plaintiff's argument is therefore peculiar, as it is highly unlikely that Plaintiff would wish a situation where his contract would be voided and his present employment possibly thrown into jeopardy. Thus, there is clear evidence that there *was* a meeting of the minds as to the transfer offer. Defendant clearly communicated in the offer that acceptance of the new position would eliminate the possibility of severance, and Plaintiff, as seen in his deposition, was aware (despite his understandable dissatisfaction) that this was the situation he faced when he accepted the offer contained in the transfer letter.

Plaintiff asserts that "[n]othing in Discovery, nor in Defendant's latest motion changes" the nature of the case, noting that I declined to grant summary judgment for the earlier version of Defendant's motion. Pl.'s Resp. to Def.'s Mot. for Summ. J. 1 (docket no. 41). I disagree with the suggestion that there has been no change. While the two motions are substantially alike, the present motion includes Plaintiff's telling admission that he understood that he could receive only severance or the Pittsylvania job, and not both. To whatever extent my present ruling is inconsistent with my February 14, 2013 opinion (docket no. 21), however, I find that I was mistaken in earlier believing there to be genuine issues of material fact. It would be imprudent to allow a case that is appropriately resolved at the summary judgment phase of litigation to go to a jury simply because of an erroneous earlier finding. Therefore, I decline to give any weight to Plaintiff's argument that the issues presented in the present motion have already been decided.

Because it is therefore clear that Defendant did not breach any contract to Plaintiff by denying him severance pay, it is unnecessary to address Defendant's final argument, that a condition precedent for performance of a contract for severance pay was not met. It is true that if

Plaintiff were continually employed, he would not be entitled to the severance pay, whereas a break in employment would lead to his being eligible for severance. Whichever is the case, however, Plaintiff forfeited any eligibility for the severance by accepting the transfer offer.

I do note, however, that the transfer offer signed by Plaintiff specifically notes that his "transfer effective date will be Monday, December 27, 2010." Def.'s Mot. for Summ. J. Ex. B 42 (docket no. 39). Furthermore, Plaintiff admitted that he was meant to be "there [at work] on Monday, December 27, 2010 if [he] wanted the job," and that he informed NAES that coming to work on the 27th would be problematic because his "step son was very sick . . . and [he] needed to take him and [his] wife . . . to the doctor in Danville [on the 27th]." *Id*. at 54. Despite Plaintiff claiming that "Defendant NAES Corporation cannot in good faith state that Plaintiff's employment has been continuous," there is in fact evidence to support that conclusion. Pl.'s Resp. to Def.'s Mot. for Summ. J. 5 (docket no. 41).

On the other hand, Plaintiff was paid his FlexLeave, as per the details of his termination from NAES. Pl'.s Resp. to Def.'s Mot. for Summ. J. Ex. B 2 (docket no. 41). Notably, this fact was not disputed by Defense counsel during oral argument, who merely suggested that NAES has a habit of paying out FlexLeave, even when the employee is ultimately not terminated, as a matter of administrative convenience. Furthermore, Plaintiff has also presented the declaration of Richard Notestein, Plaintiff's former supervisor, who noted that Plaintiff "had been terminated as of December 26, 2010." Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. C 2-3 (docket no. 41). I do find that there is also evidence to support Plaintiff's version of the events, namely that Plaintiff was briefly terminated, and it is to mind a jury question whether Defendant's explanation for why the FlexLeave was paid out indicates that there was no termination. Were it not for the transfer letter that, despite the protestations to the contrary of Plaintiff's counsel during oral

[10]

argument, has a legally binding effect in this case, I would find that there is a dispute of a material fact and deny Defendant's motion. Unfortunately for Plaintiff, the document does exist with his signature upon it.

Thus, upon further consideration of the record, and in light of the new evidence presented in the current motion, and contrary to my earlier opinion, I find that there are no genuine issues of material fact in this case. I find that Defendant did not breach any contract to provide severance to Plaintiff, because Plaintiff agreed to the terms in the transfer letter. Therefore Defendant's motion for summary judgment is **GRANTED**.

### IV. CONCLUSION

Thus, Defendant's motion for summary judgment on the remaining breach of contract claim will be granted. An appropriate order follows.

Entered this  6th   day of November, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE